# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **THE LINDERIAN COMPANY, LTD.,** | § | |
| d/b/a Summer Meadows | § | |
| xx-xxx8556 | § | **Case No. 16-60031** |
| 301 Hollybrook Dr., Longview, TX 75605 | § | |
| | § | **Case No. 16-60485** |
| **Debtor.** | § | |
| | § | **Jointly Administered** |
| **LDI MANAGEMENT, INC.,** | § | |
| xx-xxx2476 | § | **Chapter 11** |
| 301 Hollybrook Dr., Longview, TX 75605 | § | |
| | § | |
| **Debtor.** | § | |
| | § | |

# DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

Dated: May 15, 2017

Mark A. Castillo
Texas State Bar No. 24027795
Bryan C. Assink
Texas State Bar No. 24089009
CURTIS | CASTILLO PC
Bank of America Plaza
901 Main Street, Suite 6515
Dallas, Texas 75202
Telephone:  214.752.2222
Facsimile:  214.752.0709
E-mail:  mcastillo@curtislaw.net
          bassink@curtislaw.net

COUNSEL FOR DEBTORS-IN-POSSESSION

## DEBTORS' JOINT PLAN OF REORGANIZATION

The Linderian Company, Ltd. ("Linderian") and LDI Management, Inc. ("LDI", and, with Linderian, the "Debtors") propose the following Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

### 1.1   Definitions.

The capitalized terms used herein shall have the respective meanings set forth below:

"Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case incurred on or before the Effective Date entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, including Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and all fees and charges assessed against the Debtors' estates under chapter 123 of Title 28 of the United States Code.

"Allowance Date" means the date on which a Claim becomes an Allowed Claim.

"Allowed" when used with respect to any Claim, except for a Claim that is an Administrative Expense, shall mean (l) such Claim to the extent it is not a Contested Claim; (2) such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or (3) a Contested Claim, proof of which was timely filed with the Bankruptcy Court and (a) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court, or (b) as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

"Assets" means, with respect to the Debtors, all of the right, title, and interest in and to property of whatsoever type or nature owned by the Debtors as of the Petition Date, together with property subsequently acquired by the Debtors (including any recoveries arising from any restitution order), and including, but not limited to, the Estate Actions, and all other property defined in section 541 of the Bankruptcy Code, any proceeds derived therefrom, the available insurance or insurance policies, or any right, claim or cause of action of the estate including without limitation any asset wherever located or pursued.

"Ballot" shall mean the ballot to be used by holders of claims to cast their votes to accept or reject the Plan.

"Balloting Agent" shall mean the Person designated by the Debtors to receive Ballots as reflected on the face of the Ballot.  Unless expressly stated otherwise on the Ballots, the Balloting Agent shall be Curtis | Castillo PC.

"Bankruptcy Case" shall mean the voluntary cases commenced under chapter 11 of the Bankruptcy Code, for the Debtors under Case Nos. 16-60031 and 16-60485.

"Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, and codified at Title 11 of the United States Code.

"Bankruptcy Court" or "Court" shall mean the Bankruptcy Court unit of the United States District Court for the Eastern District of Texas, Tyler Division, or such other court having jurisdiction over the Bankruptcy Case.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

"Bar Date" shall mean the final date for filing of proofs of Claims or Interests in the Debtors' Bankruptcy Cases set by the Bankruptcy Court as May 10, 2016 for Linderian and December 14, 2016 for LDI, or such other date as may apply to a particular Claim or Interest pursuant to a duly entered order of the Bankruptcy Court.

"Business Day" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"Cash" shall mean legal tender of the United States of America or Cash equivalents.

"Claim" shall have the meaning as set out in section 101 of the Bankruptcy Code.

"Collateral" shall mean any property of the Debtors subject to a valid and enforceable Lien to secure the payment of a Claim.

"Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

"Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128, scheduled for _____, 2017 at _____ _.m. Central Prevailing Time, and as it may be continued from time to time, on confirmation of the Plan.  Unless expressly stated otherwise in the Plan, all references to the Confirmation Hearing or the date of the Confirmation Hearing shall mean the date the Confirmation Hearing commences.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming this Plan.

"Contested" when used with respect to a Claim, shall mean a Claim against the Debtors (1) that is listed in the Debtors' Schedules as disputed, contingent, or unliquidated, regardless of whether a proof of claim has been filed; (2) as to which an objection has been filed; or (3) that was not timely filed.

"Contested Claims Escrow" shall mean an escrow account created by the Reorganized Debtors as described in section 10.11 of the Plan.

"Contracts" shall mean all "leases" and "executory contracts" as such terms are used within section 365 of the Bankruptcy Code to which either Debtor was a party as of its respective Petition Date.

"Creditors" shall mean the holders of Allowed Administrative Expenses and/or Allowed Claims.

"Deficiency Amount" shall mean, with respect to a Secured Claim, the amount by which the Allowed Claim exceeds the sum of (1) any set-off rights of the holder of such Claim against Debtors under sections 506 and 553 of the Bankruptcy Code, and (2) the Net Proceeds realized from the disposition of the Collateral securing such Claim, or, if such Collateral is not liquidated to Cash, the fair market value of the interest of the holder of the Claim in the Debtors' interest in the Collateral securing such Claim, as determined by the Bankruptcy Court under section 506 of the Bankruptcy Code and other applicable law.

"Disallowed" when used with respect to a Claim, shall mean a Claim that has been disallowed by Final Order.

"Disclosure Statement" shall mean the Debtors' Disclosure Statement under 11 U.S.C. § 1125 in support of the Debtors' Plan of Reorganization, either in its present form or as it may be hereafter be altered, amended, or modified from time to time.

"Disclosure Statement Order" shall mean the order of the Bankruptcy Court approving the Disclosure Statement and solicitation procedures, and setting the hearing on confirmation of the Plan.

"Effective Date" shall mean a Business Day selected by the Debtors after both (i) the Confirmation Order has become a Final Order and is not stayed, and (ii) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in Article XII of the Plan.  Unless the Court orders otherwise upon cause shown, in no event shall the Effective Date be later than two (2) months after the Confirmation Order has become a Final Order.

"Estate Actions" shall mean any and all claims, causes of action, and enforceable rights of the Debtors against third parties, or assertable by the Debtors on behalf of their creditors or the estate, whether brought in the Bankruptcy Court, or any other forum, for recovery or avoidance with respect to:

(a) Obligations, transfers of property or interests in property, offsets, debt forgiveness, Cash, and other types or kinds of property or interests in property or the value thereof, recoverable or avoidable pursuant to Chapter 5 or other sections of the Bankruptcy Code or any applicable law, including, without limitation, avoidance and recovery of obligations or transfers under sections 544, 547, 548, and 550 of the Bankruptcy Code and Texas Uniform Fraudulent Transfer Act.

(b) Damages, general or statutory or exemplary (or all) or other relief, including but not limited to actions relating to or based upon—

(i) indebtedness owing to the Debtors based upon, (ii) fraud, negligence, gross negligence, willful injury or misconduct, acts or malice, or any other tort actions, including but not limited to defamation, malicious prosecution, or tortious interference with contract, (iii) breaches of contract, (iv) violations of federal or state securities laws, (v) violations of applicable corporate laws, (vi) breaches of fiduciary or agency duties, (vii) causes of action based on disregard of the corporate form or piercing the corporate veil or other liability theories, (viii) any theory of recovery against a lending institution for any action causing harm to the Debtors, (ix) equitable or legal subordination, (x) malpractice, (xi) appeals of judgments, or (xii) any other action listed in Bankruptcy Rule 7001;

(c) Damages or other relief based upon any other claim of Debtors to the extent not specifically compromised or released pursuant to this Plan or an agreement referred to, or incorporated into, this Plan, including, without limitation, claims, damages, or sanctions for violation of the Debtors' automatic stay under section 362 of the Bankruptcy Code by any person; and

(d) Any and all litigation and causes of action listed or referenced in the Schedules, the Disclosure Statement, the Plan, or any schedules or attachments thereto.

"Estimation Order" shall mean any order of the Bankruptcy Court estimating a Claim pursuant to Bankruptcy Rule 3018 or pursuant to section 502(c) of the Bankruptcy Code.

"Fee Application" shall mean an application of a Professional Person under section 330, 331, or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Bankruptcy Case.

"Fee Claim" shall mean a Claim against the Debtors under section 330, 331, or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 case.

"Final Decree" means the final decree entered by the Bankruptcy Court on or after the Effective Date and pursuant to Bankruptcy Rule 3022.

"Final Order" shall mean (l) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (2) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired, provided, however that (i) no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order, and (ii) if such order is the Confirmation Order, subsection (2) supra shall only apply if a stay of the Confirmation Order is in effect.

"General Unsecured Claim" shall mean any Claim against the Debtors that is not a Secured Claim, an Administrative Expense, a Priority Unsecured Claim, a Penalty Claim, a Disallowed Claim, or a Subordinated Claim, and is not subject to a prepetition guarantee by any non-debtor.

"General Unsecured Guaranteed Claim" shall mean any Claim against the Debtors that is not a Secured Claim, an Administrative Expense, a Priority Unsecured Claim, a Penalty Claim, a Disallowed Claim, or a Subordinated Claim and is subject to a prepetition guarantee by a non-debtor.

"Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

"Interest" shall mean any "equity security" as defined in section 101(16) of the Bankruptcy Code.

"IRS" shall mean the United States Internal Revenue Service.

"Lease" shall mean the Linderian's operating lease with Shefa Healthcare, LLC to operate Linderian's skilled nursing facility located at 301 Hollybrook Drive, Longview, TX 75605.

"Lien" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

"Net Proceeds" shall mean amounts in Cash actually received and retained by the Debtors as a result of liquidation of Assets or litigation of Estate Actions, in either case after reduction for costs of collection, including all attorneys', accountants', appraisers', brokers', consulting experts' and testifying experts', expert witnesses', and other professionals' fees and expenses and costs of court, and also after reduction of any and all non-refundable advances described herein.

"Objection Deadline" shall mean the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims as provided in Article X of the Plan.

"Penalty Claim" shall mean Claims for penalties or punitive damages, including Claims denominated as "interest" or "liquidated damages" that the Bankruptcy Court determines to be punitive in nature.

"Person" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

"Petition Date" shall mean January 19, 2016 for Linderian and August 12, 2016 for LDI, constituting the date of filing of the chapter 11 petition by the respective Debtor under Chapter 11 of the Bankruptcy Code.

"Plan" shall mean this Plan of Reorganization either in its present form or as it may hereafter be altered, amended or modified from time to time.

"Plan Documents" shall mean the documents that aid in effectuating the Plan as specifically identified as such herein or as attached as exhibits hereto, which will be substantially in the respective forms filed by the Debtors with the Bankruptcy Court prior to the conclusion of the Confirmation Hearing, and shall specifically include the Plan, Disclosure Statement, Schedules, and all of their attachments.

"Plan Participants" shall mean the Debtors, the Reorganized Debtors, and members, managers, officers, employees and advising professionals of all the preceding, all as of and after the Confirmation Date.

"Priority Tax Claim" shall mean a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Priority Unsecured Claim" shall mean any Claim (other than an Administrative Expense) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code, not including priority tax Claims.

"Professional Person" shall mean any person retained or to be compensated pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

"Pro Rata Share" shall mean the proportion that the amount of an Allowed Claim in a particular class of Claims bears to the aggregate amount of all Claims in such class of Claims, including Contested Claims, but not including Disallowed Claims.

"Reorganized Debtors" shall mean the Debtors, as reorganized on and after the Effective Date.

"Representatives" shall mean any principal, agent, responsible party, officer, manager, member, financial advisor, attorney, accountant, or other professional persons of the Debtors, including but not limited to Curtis | Castillo PC and any of its employees, attorneys, accountants, professionals, assistants, or contractors.

"Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended.

"Secured Claim" shall mean a prepetition Claim against the Debtors secured by a Lien on property of the Debtors, which Lien is valid, perfected, and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and is duly established in the Bankruptcy Case, but only to the extent of the value of the Collateral that secures payment of such Claim.

"Subordinated Claim" shall mean any Claim against the Debtors (1) subordinated by contract or by order of the Bankruptcy Court to the right of payment of General Unsecured Claims, or (2) that would be paid pursuant to Bankruptcy Code section 726(a)(2)(C), (a)(3), (a)(4) or (a)(5), if this Bankruptcy Case were a case under chapter 7 of the Bankruptcy Code.

"Term Sheet" shall mean the term sheet entered into by Linderian and its landlord, Shefa, subject to the Court's approval and attached to the Plan as Exhibit 1.

"Voting Claim" shall mean a Claim of a holder that is (i) Allowed, (ii) impaired, and (iii) receiving or retaining property on account of such Claim pursuant to the Plan.

"Voting Deadline" shall mean _____, 2017 by 5:00 p.m. Central Prevailing Time, the date and time set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received by the Debtors' counsel.

"Withheld Distribution Amount" shall have the meaning set forth in section 10.11 of the Plan.

## 1.2    Interpretation.

For purposes of the Plan, (i) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to articles and exhibits are references to articles or exhibits in the Plan; (iii) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (iv) wherever appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; and (v) the rules of construction outlined in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

## 1.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

## 1.4    Other Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**1.5**    **Integration Clause.**

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, the Creditors, the Interest holders, and other parties-in-interest upon the matters herein.

**1.6**    **Plan Documents.**

The Plan Documents are incorporated into and are part of the Plan as if set forth in full herein.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.1**    **Claims and Interests Classified.**

For purposes of organization, voting, and all confirmation matters, all Claims (except Administrative Expenses and Priority Tax Claims) and all Interests shall be classified as set forth in Article IV of the Plan. This Plan shall provide distributions only to Allowed Claims; nothing within this Plan shall provide for the Allowance of any Claim.

**2.2**    **Administrative Expense and Priority Tax Claims.**

As provided in section 1123(a)(l) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims against the Debtors shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in Article V of the Plan.

**2.3**    **Claims and Interest.**

The Plan classifies the Claims against and Interests in the Debtors as follows:

**Linderian Classes:**

Class 1:    Secured Tax Claim of the IRS

Class 2:    Secured Tax Claim of Gregg County

Class 3:    Secured Non-Tax Claim Related to Lease

Class 4:    Priority Non-Tax Unsecured Claims

Class 5:    General Unsecured Claims

Class 6:    General Guaranteed Unsecured Claims

Class 7:    Partnership Interests

**LDI Classes:**

Class A:    Priority Employee Unsecured Claims

Class B:    General Unsecured Claims

Class C:    Equity Interests

**2.4**     **Claims May Be in More Than One Class.**

An Allowed Claim is part of a particular Class only to the extent that the Allowed Claim qualifies within the definition of that Class and such Claim shall be part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

# ARTICLE III

## IDENTIFICATION OF IMPAIRED/VOTING CLASSES

**3.1**     **Impaired Classes of Claims and Interests.**

All Classes of Claims and Interests are impaired under the Plan.

**3.2**     **Impairment Controversies.**

If a controversy arises as to whether any Claim or equity Interest or any class of Claims or class of Interests is impaired under the Plan, the Bankruptcy Court shall rule at the appropriate time on any such dispute.

**3.3**     **Classes Entitled to Vote.**

All Classes of Claims and Interests are impaired under the Plan and are entitled to vote to accept or reject the Plan.

**3.4**     **One Vote per Holder.**

If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number and amount of Claims in such Class voting on this Plan.

# ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND
## EQUITY INTERESTS UNDER THE PLAN

The classes of Claims against and the Interests in the Debtors shall be treated under the Plan as set forth below:

**Linderian Class Treatment:**

**4.1**     **Secured Claims.**

Each holder of an Allowed Secured Claim will be treated in a separate class and shall receive as soon as practicable after the Effective Date (or, if later, the Allowance Date) the following treatment on account of its Allowed Secured Claim. To the extent any disputes concerning the validity or priority of Liens against the Collateral securing or purporting to secure any Secured Claim in this Class have not been resolved before the Confirmation Hearing, such disputes shall be resolved by the Bankruptcy Court upon notice and hearing.

**4.1(a)**     **Class 1 - Secured Tax Claim of the IRS.**

The IRS, as holder of the Class 1 Allowed Secured Tax Claim of the IRS, shall retain its full rights and liens to the extent of its Allowed Secured Tax Claim until its Allowed Secured Tax Claim has been paid in full. The Allowed Class 1 Secured Tax Claim of the IRS shall receive, in full satisfaction of such Claim, regular payments for the full amount of the IRS's Allowed Claims, with four percent (4%) postpetition interest per year, payable in regular monthly Cash installments, graduated annually, in the amounts set forth in the attached Payment Schedule at C-1. The Debtors calculate that the foregoing payment schedule will result in payment of the Allowed Class 1 Secured Tax

Claim in full with interest; *provided*, however, the final distribution required to fully satisfy the Allowed Priority Tax Claim may be more or less than the regular payment amount and need only be in such amount to complete the satisfaction of such Claim with interest. The installments consist of: (i) the principal component and (ii) an interest component calculated at 4% as established pursuant to Section 6621 of the Internal Revenue Code and Section 511 of the Bankruptcy Code. Notwithstanding the Contested-Claims Reserve and treatment for Contested Claims under the Plan, the installments to the Internal Revenue Service shall commence timely regardless of whether or not the Claim of the Internal Revenue Service is a Contested Claim.  After year two of the Plan, the Debtors may make accelerated payments to the IRS within the Debtors' reasonable business judgment and without penalty.

All payments made under this paragraph shall be sent to the IRS through Mikeal Smith, 1100 Commerce St., MC 5025DAL, Dallas, Texas 75242. All payments made under this paragraph shall be applied toward the payment of the IRS's Allowed Secured and Unsecured Priority Tax Claims.

**4.1(b)**    **Class 2 Secured Tax Claim of Gregg County.**

Each holder of a Class 2 Allowed Secured Tax Claim payable to a taxing authority for ad valorem taxes for tax years prior to 2016 shall retain its full rights and liens to the extent of its Allowed Secured Tax Claim until its Allowed Secured Tax Claim has been paid in full.  Payment on Class 2 Allowed Secured Tax Claims shall be made in full by January 31st of the year subsequent to the relevant tax year. Taxes for year 2016 and after shall be paid in the ordinary course of business.

**4.1(c)**    **Class 3 Secured Non-Tax Claims Related to Lease.**

The Class 3 claim is held by Linderian's landlord Shefa Healthcare, LLC and its lender Cambridge Realty Capital Ltd. of Illinois.  Unless otherwise agreed to with Linderian, the Class 3 Claim shall receive payment in full by cure and assumption of the Lease as set forth in the Term Sheet attached hereto.

**4.2**    **Class 4 – Priority Non-Tax Unsecured Claims.**

All Allowed Priority Unsecured Claims in Class 4 have been paid in full per Court order at Dkt. 14.

**4.3**    **Class 5 – General Unsecured Claims.**

Allowed General Unsecured Claims in Class 5, if and when Allowed, shall be treated as follows in full satisfaction of any and all Claims as hereinafter provided.

Linderian will pay a total of fifteen percent (15%) of each Allowed General Unsecured Claim under Class 5, whose pro rata distributions shall be paid by Linderian in the amounts set forth in the attached Payment Schedule at C-1.  Upon completion of the Payment Schedule at C-1 and in the event that Linderian holds excess funds available for distribution, Linderian may make additional pro rata distributions on behalf of Allowed General Unsecured Claims under Class 5 and Allowed General Unsecured Guaranteed Claims under Class 6 from an amount not to exceed $100,000.  No Class subordinate to or junior to Classes 5 and 6 will receive any cash distribution unless Allowed Class 5 and 6 Claims are paid in full.

**4.4**    **Class 6 – General Unsecured Guaranteed Claims.**

Holders of General Unsecured Claims that also hold a prepetition guarantee(s) shall have their Claims classified in Class 6.  Allowed General Unsecured Guaranteed Claims in Class 6, if and when Allowed, shall be treated as follows in full satisfaction of any and all Claims as hereinafter provided.

Linderian will pay a total of fifteen percent (15%) of each Allowed General Unsecured Claim under Class 6, whose pro rata distributions shall be paid by Linderian in the amounts set forth in the attached Payment Schedule at C-1.  Upon completion of the Payment Schedule at C-1 and in the event that Linderian holds excess funds available for distribution, Linderian may make additional pro rata distributions on behalf of Allowed General Unsecured Claims under Class 5 and Allowed General Unsecured Guaranteed Claims under Class 6 from an amount not to exceed $100,000.  No Class subordinate to or junior to Classes 5 and 6 will receive any cash distribution unless Allowed Class 5 and 6 Claims are paid in full.

**4.5**     **Class 7 – Partnership Interests.**

Class 7 Interests in Linderian shall be retained but shall receive no Cash distributions or Cash dividends whatsoever on account of such Interests for a period of at least six (6) years from the Effective Date of the Plan.

**LDI Class Treatment:**

**4.6**     **Class A – Priority Employee Unsecured Claims.**

Allowed Priority Employee Unsecured Claims in Class A against LDI shall be paid ninety percent (90%) of the Allowed Claim by LDI within ninety (90) days of the Effective Date, in full satisfaction of any and all such Claims.

**4.7**     **Class B – General Unsecured Claims.**

The Allowed General Unsecured Claims in Class B against LDI consists of an IRS penalty claim, plus interest, and shall be treated as follows in full satisfaction of any and all such Claims as hereinafter provided.

LDI will pay fifteen (15%) of the Allowed General Unsecured Claim under Class B in equal monthly payments contemporaneous with LDI's payment of the Allowed Priority Tax Claim of the IRS as provided elsewhere herein.  No Class subordinate to or junior to Class A or B will receive a distribution unless and until Allowed Class A and B Claims are paid in full.

**4.8**     **Class C – Equity Interests.**

Class C Interests in LDI shall be retained but shall receive no Cash distributions or Cash dividends whatsoever on account of such Interests for a period of at least six (6) years from the Effective Date of the Plan.

**4.9**     **Application of Payments to Claims.**

Only holders of Allowed Claims will receive a distribution under the Plan. Amounts paid to holders of any Claims against the Debtors shall be allocated first to the principal amounts of such Claims, with any excess being allocated to interest that accrued on such Claims.  Under no circumstances shall a holder of any Claim be entitled to any recovery in excess of 100% of the Allowed Amount of the Claim.

**ARTICLE V**

**PROVISIONS FOR TREATMENT OF
UNCLASSIFIED CLAIMS UNDER THE PLAN**

**5.1**     **Treatment of Administrative Expenses.**

All Administrative Expenses against the Debtors shall be treated as follows:

(a)     _Time for Filing Administrative Expenses._

The holder of an Administrative Expense, other than (1) a Fee Claim or (2) a Claim for ad valorem property taxes, must file with the Bankruptcy Court and serve on the Debtors and their counsel notice of such Administrative Expense within thirty (30) days of the occurrence of the Effective Date of the Plan.  Such notice must include at a minimum: (1) the name of the holder of the Claim; (2) the amount of the Administrative Expense; and (3) the basis of the Administrative Expense.  Failure to file and serve this notice timely and properly shall result in the Administrative Expense being forever barred and discharged.  Notwithstanding any other provision of this Plan, all amounts due and owing for rent, storage, employee salaries, and other related business expenses incurred in the ordinary course of business and accruing during the pendency of the Bankruptcy Case will be paid in the ordinary course of business without the necessity of filing an Allowed Administrative Claim.

(b)    Time for Filing Fee Claims.

Each Professional Person or other Person that holds or asserts an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file a Fee Application with the Bankruptcy Court, and serve on all parties required to receive notice, no later than sixty (60) days of the Effective Date. To the extent necessary, entry of the Confirmation Order shall amend and supersede any previously entered orders of the Bankruptcy Court regarding procedures for the payment of Fee Claims. Any objections to an application for the allowance of a Fee Claim must be filed with the Bankruptcy Court and served on the applicant within twenty-four (24) days after the date the Application was filed and served.

(c)    Allowance of Administrative Expenses.

An Administrative Expense with respect to which notice has been properly filed pursuant to section 5.1(a) of the Plan shall become an Allowed Administrative Expense only to the extent Allowed by Final Order. An Administrative Expense that is a Fee Claim, and with respect to which a Fee Application has been properly filed pursuant to section 5.1(b) of the Plan, shall become an Allowed Administrative Expense to the extent allowed by a Final Order.

**5.2    Payment of Allowed Administrative Expenses.**

Each holder of an Allowed Administrative Expense against the Debtors shall receive a single Cash payment from the Reorganized Debtors in the amount of the unpaid portion of such Allowed Administrative Expense either (1) upon the later of the Effective Date or the Allowance Date, or (2) upon such terms as may be agreed to in writing by such holder. It shall be a condition to the Effective Date that the Debtors' estates has escrowed enough funds to satisfy all accrued, anticipated, and requested fees and expenses of all Professional Persons as of the anticipated Effective Date.

**5.3    Treatment of Priority Tax Claims.**

The IRS, as holder of an unclassified Allowed Priority Tax Claim against each Debtor, shall retain its full rights to the extent of its Allowed Priority Tax Claim until its Allowed Priority Tax Claim has been paid in full. The Allowed Priority Tax Claim of the IRS shall receive, in full satisfaction of such Claim, regular payments for the full amount of the IRS's Allowed Claim, with three percent (3%) postpetition interest per year, payable in regular monthly Cash installments, graduated annually, in the amounts set forth in the attached Payment Schedule at C-1. The Debtors calculate that the foregoing payment schedule will result in payment of the Allowed Priority Tax Claim in full; *provided*, however, the final distribution required to fully satisfy the Allowed Priority Tax Claim may be more or less than the regular payment amount and need only be in such amount to complete the satisfaction of such Claim. After year two of the Plan, the Debtors may make accelerated payments to the IRS within the Debtors' reasonable business judgment and without penalty.

Except as stated otherwise with respect to any particular claim, each holder of an Allowed Priority Tax Claim, shall receive, in full satisfaction of such holder's Allowed Priority Tax Claim, regular monthly Cash payments from the Reorganized Debtors to pay the full amount of such Allowed Priority Tax Claim, no later than five years after the Petition Date; provided, however, that any such claim holder may receive such other treatment as may be agreed upon in writing by the Debtors and the holder of such Allowed Priority Tax Claim.

## ARTICLE VI

## CREATION OF REORGANIZED DEBTORS

**6.1    Creation of the Reorganized Debtors.**

On the Effective Date, the Reorganized Debtors shall be created for the purpose of operating, preserving and liquidating the Assets for the benefit of the Creditors and satisfying Claims consistent with the Plan. The Reorganized Debtors shall be entitled and authorized to engage in the conduct of the trade or business of the Debtors solely to the extent reasonably necessary to, and consistent with, the distribution purposes of the Plan. The Reorganized Debtors shall receive any and all assets coming into or becoming a part of the Debtors' estates and disburse the proceeds from

revenues realized from the operation, lease, assignment, sale or other similar transaction involving the property of the Reorganized Debtors consistent with the terms of this Plan.

**6.2**     **Funding of the Reorganized Debtors.**

    To fund the Reorganized Debtors, by operation of the Confirmation Order, the Reorganized Debtors shall be in possession of and have title to all Assets as of the Effective Date, including any cash, bank deposits, certificates of deposit, inventory, furniture, fixtures, equipment, real property, rights, contracts, claims and causes of action, garnishments, and all documents evidencing and relating to the ownership of estate property. All accounts receivable of the Debtors shall be deemed, as of the Effective Date, to have been assigned to the Reorganized Debtors. The conveyances of all property of the Debtors' estates shall be accomplished pursuant to the Plan and the Confirmation Order and shall be effective upon the Effective Date without the need of further documentation or instruments of conveyance, other than the Plan and the Confirmation Order. Upon the Effective Date, the Reorganized Debtors shall also be deemed to have taken (a) an assignment of all Estate Actions, and (b) an assignment, bill of sale, deed and/or release covering all remaining Assets discharged above. The Reorganized Debtors may present such orders as may be necessary to require third parties to accept and acknowledge such conveyance to the Reorganized Debtors. Such orders may be presented without further notice other than as has been given in this Plan.

**6.3**     **Name of Reorganized Debtors.**

    The Reorganized Debtors shall retain the names "The Linderian Company, Ltd." and "LDI Management, Inc." but may do business under any name the Reorganized Debtors deem advisable or which is necessary or appropriate and allowable by law, including, without limitation, "Summer Meadows."

**ARTICLE VII**

**VESTING OF ASSETS**

    On the Effective Date, all property of the estates of the Debtors, including but not limited to any and all rights, claims, causes of action, or Estate Actions, whether known or unknown, asserted or unasserted, at law or equity, and whether arising prepetition or postpetition, and whether arising pursuant to the Bankruptcy Code or other applicable law, including without limitation all rights, claims, or causes of action referenced within the body of, or exhibits attached to, the Plan, the Disclosure Statement, or the Debtors' Schedules or Statements of Financial Affairs, shall vest in the Reorganized Debtors free and clear of all Liens or encumbrances. To the extent any court of competent jurisdiction determines under applicable law that, notwithstanding the provisions of the Plan, a cause of action is not assignable, then any assignment of such cause of action pursuant to the Plan shall be void *ab initio;* provided, however, that the proceeds of any such cause of action shall be transferred to the Reorganized Debtors upon receipt by the Debtors.

    To the extent necessary or appropriate, the Reorganized Debtors may be substituted as the plaintiff or defendant in any or all lawsuits pending in which any Debtor is a plaintiff, defendant, or is seeking relief. The Reorganized Debtors shall be and hereby is appointed the sole corporate representatives of the Debtors for purposes of prosecuting any and all rights, claims, or causes of action, including but not limited to, all Estate Actions and actions arising pursuant to Chapter 5 of the Bankruptcy Code, whether known or unknown, asserted or unasserted, at law or equity, and whether arising pursuant to the Bankruptcy Code or other applicable law. The Reorganized Debtors may, in their sole discretion, prosecute, settle, or dismiss rights, claims, or causes of action, and all proceeds therefrom shall be property of the Reorganized Debtors.

**ARTICLE VIII**

**CORPORATE AUTHORITY**

    All actions and transactions contemplated under the Plan and the Disclosure Statement shall be authorized upon confirmation of the Plan without the need of further board, officer, or ownership resolutions, approval, notice, or meetings, other than the notice provided by serving this Plan on all known creditors of the Debtors, all equity Interest holders as of the entry of the order approving the Disclosure Statement, and all current members, officers, or management of the Debtors. The Confirmation Order shall include provisions authorizing and directing the president

and secretary and other officers, managers, members, and authorized representative(s) of the Debtors to execute such documents as are necessary to effectuate the Plan, which documents shall be binding on the Debtors, the Debtors' Creditors, and all of the Debtors' equity Interest holders.  Subject to the provisions of this Plan, the Reorganized Debtors are vested with authority to take any action on behalf of the Debtors that would otherwise require the approval of the members, managers, or officers of the Debtors.

The Reorganized Debtors' management and employees as of the Confirmation Date may be employed by the Reorganized Debtors at the same or similar rates and terms as existed during the pendency of the Bankruptcy Case. From and after the Effective Date, the existing managers and officers of the Debtors shall have no further duties or responsibilities with respect to the Debtors or the Reorganized Debtors, except to the extent employed by the Reorganized Debtors after the Effective Date.  The Debtors' current managing partner and president, Greg Sechrist, shall retain and be granted all authority to execute any and all documents on behalf of the Reorganized Debtors unless and until a successor or replacement shall be designated by the Reorganized Debtors.

## ARTICLE IX

## DUTIES AND POWERS OF THE REORGANIZED DEBTORS

### 9.1     The Reorganized Debtors' Duties

The Reorganized Debtors shall operate in the ordinary course of business, sell, transfer, assign, convey, lease, use, or otherwise liquidate all property of the Reorganized Debtors, and use the proceeds thereof to pay (a) the Reorganized Debtors' administrative costs and expenses and (b) Allowed Administrative Expenses and Allowed Claims or Interests as designated within the Plan, unless the Reorganized Debtors deem any asset to be of inconsequential value or burdensome to the Reorganized Debtors.  Further, the Reorganized Debtors may abandon any other asset within their reasonable business judgment.  The proceeds of such liquidation shall be distributed as provided in the Plan.  Further, the proceeds of such liquidation shall, to the extent possible, be distributed in the same taxable year in which received or obtained by the Reorganized Debtors; provided, however, that the Reorganized Debtors may retain an amount of such funds as may be reasonably necessary to maintain the value of the Reorganized Debtors' Assets or to meet claims and contingent liabilities (including disputed claims).  The Reorganized Debtors' efforts to liquidate Assets shall be continual so that they may make timely distribution to holders of Allowed Claims.

### 9.2     The Reorganized Debtors' Powers.

Subject to the terms of the Plan, the Reorganized Debtors shall have full power and authority, without further notice or Bankruptcy Court approval, to:

(a)     Perfect and secure its rights, title, and interest to any property comprising the estate;

(b)     Operate in the ordinary course of business for purposes of making distributions under the Plan;

(c)     Sell or convert all assets of the estate to Cash and distribute the Net Proceeds pursuant to the Plan, subject to the terms otherwise set forth in the Plan or Confirmation Order;

(d)     Settle or dismiss litigation claims that the Reorganized Debtors determines in their sole discretion should be settled, subject to the terms otherwise set forth in the Plan or Confirmation Order, including Article VII of the Plan;

(e)     To contract and sell the Reorganized Debtors' estates or any part or parts thereof for such purchase price and for cash on such terms as the Reorganized Debtors shall deem appropriate, subject to the terms otherwise set forth in the Plan or Confirmation Order;

(f)     Pay and discharge costs, expenses, or obligations deemed necessary to preserve the estate or any part thereof or to preserve the Reorganized Debtors;

    (g)    Improve or repair the Reorganized Debtors' properties or any parts thereof as may be necessary to effectuate the orderly liquidation thereof;

    (h)    Purchase insurance sufficient to protect fully the Reorganized Debtors' properties or any part or parts thereof and to protect such properties from liability;

    (i)    Maintain bank accounts in which Cash of the Reorganized Debtors is deposited;

    (j)    Draw checks and make disbursements;

    (k)    Employ such attorneys, accountants, appraisers, and any other professionals as are necessary in the administration of the Reorganized Debtors or for prosecution of litigation claims belonging to the Debtors, and to compensate the same from the Reorganized Debtors' estate, which professionals may be professionals retained before the Effective Date by the Debtors; such expenses shall be paid without notice, Bankruptcy Court approval, or order;

    (l)    Employ auctioneers, brokers, and sales representatives;

    (m)    Take any action necessary to protect the Reorganized Debtors' estate or to increase the value of the Reorganized Debtors' assets;

    (n)    Enter into contracts and execute negotiable and non-negotiable obligations;

    (o)    Sue and be sued;

    (p)    Appoint, remove, and act through agents, managers, and employees, and confer upon them such power and authority as may be necessary or advisable;

    (q)    Review and determine the allowance of Claims or Interests and file objections to any Claim or Interest that the Reorganized Debtors dispute;

    (r)    Seek the valuation of assets by appraisers, valuation experts, or by the Bankruptcy Court;

    (s)    Borrow money pursuant to the terms of the Plan;

    (t)    Withhold employment and income taxes, or other taxes as is appropriate;

    (u)    Prosecute to final judgment all litigation of the Reorganized Debtors' Claims and Estate Actions. The Reorganized Debtors may also bring or defend those appeals of litigation claims if it determines that doing so is in the best interest of the estate; and

    (v)    Take such other actions, as may be necessary or helpful to consummate the Plan.

**9.3**    **Management of Estate.**

The Reorganized Debtors shall have such other or additional powers as may be vested in or assumed by the Reorganized Debtors pursuant to the Plan or any Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan. The Reorganized Debtors shall exercise such powers in accordance with the provisions of the Plan. The Debtors' current managing partner and president, Greg Sechrist, shall retain and be granted all authority to execute any and all documents on behalf of the Reorganized Debtors unless and until a successor or replacement shall be designated by the Reorganized Debtors.

**9.4**    **Maintenance of Records.**

On and after the Effective Date, the Reorganized Debtors shall have complete and exclusive access to, and control of, all books and records of the Debtors. The Debtors, any management personnel, brokers, appraisers, and other professionals shall immediately surrender all such books and records to the Reorganized Debtors on the Effective

Date to the extent requested by the Debtors.  The Reorganized Debtors shall keep or cause to be kept books containing a description of all property from time to time constituting the estate and an accounting of all receipts and disbursements of Reorganized Debtors' property or the proceeds thereof.

## ARTICLE X

## PROCEDURES GOVERNING DISTRIBUTIONS
## AND FOR RESOLVING AND TREATING CONTESTED AND DISPUTED CLAIMS UNDER THE PLAN

### 10.1    Order of Distribution of Cash.

The Reorganized Debtors shall distribute or reserve available Cash of the estate in the following order of priority:

(a)    Any Cash or other property that is subject to the valid Lien and Allowed Claim of a Secured Creditor shall be distributed to the holders of the Allowed Secured Claims pursuant to Article IV of the Plan;

(b)    To pay Allowed Administrative Expense Claims pursuant to Article V of the Plan, to the extent not satisfied by funds escrowed by the Debtors as of the Effective Date;

(c)    To pay the post-confirmation expenses of the Reorganized Debtors for preserving, liquidating, and administering the remaining estate Assets and collecting the estate's outstanding receivables and Estate Actions;

(d)    To pay Allowed Priority Tax Claims and Allowed Priority Unsecured Claims pursuant to the Plan, in the order of priority prescribed by the Bankruptcy Code section 507(a) as applicable to such Allowed Claims;

(e)    To pay Allowed General Unsecured Claims and Allowed General Unsecured Guaranteed Claims pursuant to the Plan.

### 10.2    Timing of Distributions.

The Reorganized Debtors shall make all payments timely as expressly required by the Plan.  Otherwise, distributions to Creditors shall be made by the Reorganized Debtors each time it has accumulated sufficient funds to merit a distribution as called for by the Plan, considering the number of Creditors and dollar amount of their Allowed Claims, or when the Reorganized Debtors have determined that no additional funds are likely to be collected.

### 10.3    Distributions to be Pro Rata Within Class.

All distributions constituting partial payment to a Class of Allowed Claims shall be made on a Pro Rata Share basis to the holders of Allowed Claims in such Class.

### 10.4    Federal Tax Identification Number.

The Reorganized Debtors may suspend distribution to any Creditor that has not provided the Reorganized Debtors with their Federal Tax Identification number or social security number, as the case may be.

### 10.5    Means of Cash Payment.

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a domestic bank, or, at the Reorganized Debtors' option, by wire transfer from a domestic bank.

### 10.6    Delivery of Distributions.

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proof of Claim filed by such holders (or at the last known addresses of such a holder if no proof of Claim or proof or equity Interest is filed or if the Reorganized Debtors has been notified in writing of a change of address), except as

provided below.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtors is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such distributions are claimed.  All claims for undeliverable distributions shall be made on or before the first anniversary date of such distribution.  After such date, all unclaimed property shall revert to the Reorganized Debtors, and the claim of any holder with respect to such property shall be discharged and forever barred.

### 10.7    Time Bar to Cash Payments.

Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within six (6) months after the date of issuance thereof.  Requests for reissuance of any such voided check shall be made in writing directly to the Reorganized Debtors by the holder of the Allowed Claim with respect to which such check originally was issued.  Any such request for reissuance shall be made on or before ninety (90) days after such check became null and void.  After such date, all claims in respect to voided checks shall be discharged and forever barred.

### 10.8    No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

### 10.9    Objection Deadline.

As soon as practicable, but in no event later than three (3) months after the Effective Date, unless extended by order of the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon each holder of each Claim to which an objection is filed.

### 10.10    Prosecution of Objections.

On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement, or withdrawal of all objections to Contested Claims may be made by the Reorganized Debtors.  Any party-in-interest may seek authority from the Court to file a claim objection(s) upon (i) making written demand on the Reorganized Debtors; (ii) failure to bring such claim objection(s) by the Reorganized Debtors within thirty (30) days of receipt of the written demand; and (iii) upon order of this Court after a hearing and at least twenty-one (21) days' notice to the Reorganized Debtors.

### 10.11    Withholding of Distribution on Account of Contested Claims.

The Reorganized Debtors shall withhold from any distribution an amount sufficient to be distributed on account of the full amount of Contested Claims (the "Withheld Distribution Amount").  The Withheld Distribution Amount shall be placed in the Contested Claims Escrow held by the Reorganized Debtors.  To the extent requested by the Reorganized Debtors or the holder of the Contested Claim, the Bankruptcy Court may estimate (upon proper notice and an opportunity for hearing to the holder of the Contested Claim) the amount to be placed in escrow (the "Contested Claims Escrow") on account of any Contested Claim, which amount need not be the full amount of the asserted Claim.

### 10.12    Distributions After Allowance.

Payments and distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.  With respect to any Claim that is a Contested Claim on the Effective Date, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Contested Claim becomes a Final Order, the Reorganized Debtors shall distribute to the holder of such Claim from the Contested Claims Escrow any distribution that would have been distributed to such holder if the Claim had been an Allowed Claim on the Effective Date.

**10.13** **Distributions After Disallowance.**

Any Withheld Distribution Amount in the Contested Claims Escrow after an objection to a Contested Claim has been resolved by Final Order of the Bankruptcy Court shall be distributed in accordance with the provisions of the Plan. The Reorganized Debtors may and shall rely on an order of the Bankruptcy Court fixing the amount of a Claim or disallowing a Claim. The Reorganized Debtors shall make no further reserve on account of a Contested Claim that has been disallowed or reduced by the Bankruptcy Court, unless the affected Creditor obtains a stay pending appeal that requires that the Reorganized Debtors maintain a reserve on account of such Claim. In no event shall the reversal or modification on appeal or reconsideration of a Bankruptcy Court order disallowing a Claim affect the validity or require the disgorgement of any distributions previously made pursuant to the Plan if such Creditor did not obtain a stay pending reconsideration or appeal that required a further or continuous reserve.

**10.14** **Estimated Claims.**

Except as otherwise provided herein, the Court may estimate for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code, (i) any Contested Claim or unliquidated Claim, or (ii) any portion or part of a Claim that is, itself, unliquidated. Any Estimation Order, to the extent it becomes a Final Order, shall determine the amount of the Allowed Claim so estimated.

**10.15** **Deficiency Claims.**

Except as otherwise provided in the Plan or in any other Final Order of the Court, in the event of Debtors' return of collateral, the holder of Secured Non-Tax Claims, shall have thirty (30) days from the earlier of (a) the date that Debtors return to such holder the Collateral securing such holder's claim, or (b) the date of entry of a Final Order of the Court lifting the automatic stay and authorizing Debtors to return to such holder the Collateral securing such holder's claim, to file a proof of claim for any resulting unsecured deficiency claim, including all fees and costs associated with liquidation of the Collateral under applicable law, against the estate resulting from the liquidation of the Collateral. A deficiency proof of claim filed as described herein shall receive the treatment provided for Class 5 as described in Article IV of the Plan.

**10.16** **Bankruptcy Court to Hear Disputes Over Distributions and Plan Issues.**

No entity or holder of a Claim or an Interest, and no representative thereof, shall have or pursue any claim or cause of action (a) against the Debtors, Reorganized Debtors, or their Representatives for making payments or taking any action in accordance with the Plan or for implementing the provisions of the Plan or (b) against any holder of a Claim for receiving or retaining payments or other distributions as provided for in the Plan, except as may be brought before this Bankruptcy Court after filing and service with appropriate and reasonable notice.

**ARTICLE XI**

**PROVISIONS REGARDING EXECUTORY CONTRACTS
AND UNEXPIRED LEASES UNDER THE PLAN**

**11.1** **Assumption.**

The Plan constitutes a motion by the Debtors to assume, as of the Effective Date, all executory contracts, and unexpired leases of the Debtors that (a) were not the subject of a separate motion to assume or reject pending on the Confirmation Date, (b) were not assumed or rejected prior, (c) did not expire on their own terms prior to the Effective Date, or (d) are not listed for rejection below.

The Debtors, through the Plan, is moving to assume each of the following prepetition contracts:

| Contract Party | Contract Description | Cure Amount, if any |
|---|---|---|
| AAA East Texas Storage | Lease of off-premises storage unit(s) | $0 |
| Shefa Healthcare, LLC | Premises Lease at 301 Hollybrook Drive, Longview, TX 75605 | $180,000 per Term Sheet |
| Sysco East Texas | Product supplier | $7,252.01 admin claim |
| US Foods, Inc. | Product supplier | $3,116.32 admin claim |
| Compass Hospice of East Texas | Contract for hospice services | $0 |
| Heart to Heart Hospice | Contract for hospice services | $0 |
| Heart's Way Hospice | Contract for hospice services | $0 |
| Texas Home Health Hospice of Longview | Contract for hospice services | $0 |

Unless otherwise specified in the Plan, the Debtors shall pay the cure amounts for assumed contracts in six equal monthly payments beginning on the first day of the month following the Effective Date.

Under the Plan, the Debtors also is assuming its contract with Curtis | Castillo PC and its attorneys, which were utilized postpetition by the Debtors in the Bankruptcy Case. No other pre-petition contracts with Professional Persons are assumed and/or cured by the Plan other than as expressly set forth in this subparagraph.

**11.2     Bar to Rejection Claims.**

If the rejection of an executory contract or unexpired lease results in a claim for damages by the other party or parties thereto, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, or their respective properties or their agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before thirty (30) days after the Effective Date.

## ARTICLE XII

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**12.1     Conditions Precedent to the Effective Date.**

The occurrence of the Effective Date of the Plan is subject to the occurrence of the following conditions precedent:

(a)     All documents effectuating the Plan shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein;

(b)     Debtors shall have escrowed, in the trust account of its undersigned bankruptcy counsel or otherwise, an amount necessary to satisfy all accrued, anticipated, and requested fees and expenses of the U.S. Trustee and all Professional Persons as of the anticipated Effective Date; and

(c)     The Confirmation Order shall have become a Final Order or shall not be stayed by a court of competent jurisdiction.

**12.2**     **Waiver of Conditions.**

     The conditions to the Effective Date may be waived, in whole or in part by the Debtors, upon written approval of Debtors' counsel, at any time, without notice. The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure (including any actions or inaction by the Debtors). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each right shall be deemed an ongoing right that may be asserted at any time.

**ARTICLE XIII**

**RETENTION OF JURISDICTION**

**13.1**     **Scope of Jurisdiction.**

     Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under, or related to the Bankruptcy Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

     (a)    To hear and determine pending motions for the assumption or rejection of Contracts, and the allowance of Claims resulting therefrom.

     (b)    To hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;

     (c)    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

     (d)    To hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim or equity Interest;

     (e)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

     (f)    To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

     (g)    To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, and to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

     (h)    To hear and determine all applications for the allowance of Administrative Expenses, including all Fee Applications and Fee Claims and any objections thereto;

     (i)    To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

     (j)    To enter and implement orders to take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions provided for in the Plan and the Confirmation Order;

     (k)    To recover all assets of the Debtors and property of the estates, wherever located;

     (l)    To hear and determine matters concerning state, local, and federal income taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(m)      To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)      To hear and determine all actions commenced or prosecuted by the Reorganized Debtors pursuant to sections 505, 510, 542-45, 547-50, and 553 of the Bankruptcy Code, collection matters related thereto, and settlements thereof;

(o)      To hear and determine any disputes concerning Contested Claims;

(p)      To hear and determine any disputes concerning the validity or priority of Liens against the Collateral securing or purporting to secure any Secured Claim; and

(q)      To enter a Final Decree closing the Bankruptcy Case.

Notwithstanding the foregoing language in this subsection, the Plan does not request, and the Court Order shall not grant the Bankruptcy Court any constitutional authority or jurisdiction beyond the scope allowed by *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932 (2015).

### 13.2    Failure of the Bankruptcy Court to Exercise Jurisdiction.

If the Bankruptcy Court abstains from exercising jurisdiction, declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, this Article XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

### 14.1    Setoff and Other Rights.

In the event that the Debtors have a claim of any nature whatsoever against the holder of a Claim, the Debtors or the Reorganized Debtors may, but are not required to, setoff against the Claim (and any payments or other distributions to be made in respect to such Claim hereunder), subject to the provisions of section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any claim the Debtors or the Reorganized Debtors have against the holder of a Claim.

### 14.2    Discharge.

 Except as otherwise expressly provided in the Plan, the rights and treatment afforded in the Plan shall discharge all existing security interests, liens, debts, and Claims of any kind, nature, or description whatsoever against the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtors shall be and, shall be deemed to be, discharged, and all holders of Claims shall be precluded from asserting against the Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim. Confirmation of the Plan and the obligations imposed on the Debtors and/or the Reorganized Debtors herein shall be in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors and/or the Reorganized Debtors or any of their assets or properties; and, upon the Effective Date, the Debtors shall be deemed discharged, and released from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code that arose before the Effective Date, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, or (c) the holder of a Claim based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors. As provided in section 524 of the Bankruptcy Code, such

discharge shall void any judgment against the Debtors at any time obtained, to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtors, or their property, to the extent it relates to a Claim discharged.  The discharge granted herein shall not discharge the Reorganized Debtors from its obligations under the Plan.

### 14.3    Injunctions.

*The Confirmation Order shall contain such injunctions as may be necessary or helpful to effectuate the effectiveness of the Debtors' Plan provided herein. Without limiting the generality of the foregoing, such injunction shall include an absolute prohibition from pursuing or collecting Claims against the Debtors in any manner other than as provided for in the Plan, including any trust fund liabilities, constructive trusts, statutory trusts, or liabilities arising from contribution, subrogation, warranty, indemnification or guarantee agreements of the Debtors, or any foreclosure action by any Lien creditors.  These injunctions shall not prevent creditors from enforcing their rights under the Plan, and may be lifted by the Court upon motion filed after notice and a hearing given in the event of an uncured Debtors' default as set forth in the Plan.*

### 14.4    Injunction Regarding Claims Against the Debtors.

*From and after the Confirmation Date, all persons or entities that hold, have held, or may hold Claims against or Interests in the Debtors are permanently restrained and enjoined from, directly or indirectly:*

*(a)    Commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, or Assets of the Debtors to collect or recover any property on account of any such Claim or Interest;*

*(b)    Enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order to collect or recover any property on account of any such Claim or Interest against the Debtors or the Reorganized Debtors, or Assets of the Debtors;*

*(c)    Creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtors or the Reorganized Debtors, or the Assets of the Debtors;*

*(d)    Asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due the Debtors or the Reorganized Debtors, or the Assets of the Debtors, except as otherwise allowed by the Bankruptcy Court or Bankruptcy Code;*

*(e)    Commencing or continuing any action against the Debtors or the Reorganized Debtors, or the Assets of the Debtors in any manner or forum in respect of such Claim or Interest that does not conform to or comply with or that is inconsistent with the Plan; and*

*(f)    Taking any action to interfere with the implementation or consummation of the Plan.*

Notwithstanding the foregoing, however, nothing herein shall prohibit any holder of a Claim or Interest from prosecuting a proof of Claim or Interest in the Bankruptcy Case or from enforcing such holder's rights under the Plan.

### 14.5    Channeling Injunction.

*The Bankruptcy Court shall retain exclusive jurisdiction over any case, suit, or proceeding brought on any claim or cause of action related to the Bankruptcy Case that exists as of the Effective Date against Debtors, Reorganized Debtors, or any Representative for conduct pertaining to Debtors during the Bankruptcy Case and that any entity wishing to bring such case, suit, or proceeding shall do so in the Bankruptcy Court.  Additionally, nothing herein shall limit or affect the protections provided Debtors and Reorganized Debtors by sections 524 and 1141 of the Bankruptcy Code.*

**14.6**     <u>Lawsuits.</u>

Upon entry of the Confirmation Order, all lawsuits, litigation, administrative, police, or regulatory actions, or other proceedings, judicial or administrative, in connection with the assertion of a Claim or Lien against the Debtors or property of the Debtors' estates shall be subject to the discharge and any other injunctions set forth in the Bankruptcy Code or the Court's Confirmation Order. Such discharge injunctions shall be with prejudice to the assertion of such Claim or Lien in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court in the Confirmation Order from taking any action in violation of the Bankruptcy Code or the Confirmation Order. All lawsuits, litigation, administrative, police, or regulatory actions, or any other proceedings, judicial or administrative, in connection with the assertion of any Claims by the Debtors shall become property for the Reorganized Debtors to prosecute, settle, or dismiss as the Reorganized Debtors see fit, subject to the express terms of this Plan.

**14.7**     <u>Insurance.</u>

Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtors in which the Debtors are or were the insured party. The Reorganized Debtors shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering, or delaying coverage on any basis regarding or related to the Debtors' bankruptcy, the Plan, or any provision within the Plan.

**14.8**     <u>De Minimis Distributions.</u>

No distribution of less than $50.00 shall be required to be made to any holder of an Allowed Claim. Such undistributed amount may be retained by the Reorganized Debtors.

**14.9**     <u>Payment of Statutory Fees.</u>

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid through the entry of a final decree in the Bankruptcy Case.

**14.10**     <u>Bankruptcy Restrictions.</u>

From and after the Effective Date, the Reorganized Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, 364, Rule 9019, etc.), the Bankruptcy Court, or the United States Trustee's guidelines. The Reorganized Debtors may compromise claims and controversies post-Effective Date without the need of notice or Bankruptcy Court approval for any settlements. The Reorganized Debtors may operate the Debtors' business in such manner as is consistent with companies not in bankruptcy without the need of seeking Bankruptcy Court approval with regard to any aspect of the Reorganized Debtors' business. No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtors shall provide, until the entry of a final decree, quarterly operating reports or such other financial reports as the U.S. Trustee may reasonably request.

**14.11**     <u>Binding Effect.</u>

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims, the holders of Interests, the Reorganized Debtors, and all of their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed (a) to constitute a waiver or release of any Claims by the Debtors or any other Person, (b) to prejudice in any manner the rights of the Debtors or any other Person or (c) to constitute any admission by the Debtors or any other Person.

**14.12**     <u>Governing Law.</u>

Unless a rule of law or procedure is supplied by contract or by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan or the Bankruptcy Case, including the documents executed pursuant to the Plan.

### 14.13    Modification of Plan.

Modifications of the Plan may be proposed in writing by the Debtors at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtors, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and (c) the circumstances warrant such modifications. A holder of a Claim or equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### 14.14    Revocation or Withdrawal of this Plan.

(a)    The Debtors reserve the right to modify, amend, supplement, revoke, and/or withdraw this Plan at any time prior to the Confirmation Date.

(b)    If the Debtors revoke or withdraw the Plan, the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

### 14.15    Severability.

Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Debtors may modify the Plan in accordance with section 14.13 of the Plan so that such provision shall not be applicable to the holder of any Claim or equity Interest. At the option of the Debtors, such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

### 14.16    Creditor and Debtor Defaults.

Except as to any default of the Debtors as to any obligation to the IRS as provided below, any act or omission by a creditor in contravention of a provision within this Plan shall be deemed an event of default under this Plan. Upon an event of default that remains uncured after notice and opportunity to cure, sufficient under the circumstances, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order. If such creditor is found to be in default under the Plan, such party may be required to pay the reasonable attorneys' fees and costs of the Reorganized Debtors in pursuing such matter. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Rule 70 of the Federal Rules of Civil Procedure, or (b) issue and enter such other order as may be equitable which does not materially alter the terms of the Plan as confirmed.

In the event that the holder of an Allowed Claim asserts that a default under the Plan has occurred by the Reorganized Debtors, such person must provide the Reorganized Debtors and their counsel with written notice of such default and a reasonable opportunity to cure. If the default asserted in the notice remains uncured on the thirtieth (30th) day from the date on which such notice is received, the holder of such Allowed Claim may pursue any rights or remedies it may have under the Plan, applicable non-bankruptcy law, whether state, federal, or otherwise, including in the Bankruptcy Court.

**Debtor Default as to the Allowed Claims of the IRS.** Notwithstanding the foregoing paragraphs in this section, the following terms shall govern payment default on the IRS's Allowed Claims.

**Events of Default.** The occurrence of any of the following shall constitute an event of default under the Plan as to the Allowed Claims of the IRS:

1) **Failure to Make Payments.** Failure on the part of Debtors to pay fully when due any payment required to be made in respect of the Plan debt. However, due to the size and ongoing nature of the IRS's claim, upon a default

under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtors or their successor in interest fails to make any plan payments, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtors or their successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtors are in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtors are in default.

(B) If the United States declares the Debtors or their successor in interest to be in default of the Debtors' obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtors or their successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send one notice of default, and upon the second event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtors. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS, 1100 Commerce Street, Mail Code 5025 DAL, Dallas, Texas 75242 attn: Mikeal Smith.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtors to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtors to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

**14.17    Retention of Causes of Action.**

The Reorganized Debtors shall retain, all rights, claims, defenses, and causes of action including, but not limited to, the Estate Actions, and shall have sole authority to prosecute and/or settle such actions without approval of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise. Without limitation, the Reorganized Debtors intend to preserve, and to not waive or release in any way, any and all Estate Actions, including for avoidance and recovery under sections 544, 547, 548, and 550 of the bankruptcy code and Texas Uniform Fraudulent Transfer Act.

**14.18    Closing the Case.**

Upon the Plan being substantially consummated and upon motion by the Reorganized Debtors, a final decree shall be entered containing such provisions as may be equitable. The Bankruptcy Court may close the case, but may retain jurisdiction thereafter to the extent allowed by law, and/or may reopen the case under section 350 of the Bankruptcy Code.

<h2 align="center">ARTICLE XV</h2>

<h2 align="center">RULE 9019 MOTION TO COMPROMISE WITH LANDLORD</h2>

**15.1    Motion to Compromise.**

As further described in the Disclosure Statement, the Plan constitutes a compromise with Linderian's landlord, Shefa Healthcare, LLC, concerning various disputes among them over Linderian's main operating Lease. Upon confirmation, Linderian and Shefa shall be deemed to have compromised their disputes, principally requiring Linderian to make the payments set forth in the Plan Projections, Exhibit C-1, and Shefa to withdraw its lift-stay motion and requests to terminate Linderian's Lease.

**15.2**      **No Further Order.**

Entry of the Confirmation Order shall, among other things, constitute a final order approving the compromise between Linderian and Shefa, requiring no further orders to authorize the parties' settlement or their efforts to effectuate same with the Notice of Effective Date to be filed by Linderian when its confirmed Plan becomes effective.

**DATED: May 15, 2017**

**The Linderian Company, Ltd.**

**By:**      **Greg Sechrist**
**Its:**      **Managing Partner**

       **By:**   *<pending Court approval>*
            **Greg Sechrist, Managing Partner**

**LDI Management, Inc.**

**By:**      **Greg Sechrist**
**Its:**      **President**

       **By:**   *<pending Court approval>*
            **Greg Sechrist, President**

**Attachments:  Exhibit 1 – Term Sheet**